## In the Court of Common Pleas of Allegheny County.

### THE COMMONWEALTH ex rel. v. JACOB STUCKRATH.

#### Election of County Commissioners—Quo Warranto.

The system for the election of County Commissioners provided in the New Constitution does not go into operation until the General Election in November, 1875.

Where the three-years term of an incumbent County Commissioner would expire January, 1875, the election of his successor at the General Election in November, 1874, to serve until January, 1876, was authorized and valid under the provisions of the Act of 15 April, 1834 (P. L. p. 540), and the New Constitution.

Under section 2, Act June 14, 1836, (P. L. p. 1206), any person duly elected to a township or county office, and qualified, is competent and has the right to file his suggestion, without the intervention of the Attorney-General, for a writ of *quo warranto* against the person intruding or unlawfully holding the office.

Opinion filed January 29th, 1875, by

STERRETT, P. J. The writ of *quo warranto* in this case was issued upon the suggestion of Jacob Lashel, setting forth in substance:

1st. That at the general election in 1871, the defendant, Jacob Stuckrath, was duly elected a Commissioner of the county of Allegheny, to serve for three years next ensuing said election and until his successor was duly elected or appointed, and that the said Stuckrath, on and since the first Monday of January instant, has exercised and still doth exercise the franchises, rights, powers and privileges of a commissioner of said county.

2d. That at the general election in November last the relator was duly elected a Commissioner of said county, to succeed said Stuckrath, and on the first Monday of January. instant, took and subscribed the oath of office prescribed by the Constitution, and gave bond, in due form, which was approved by the court and recorded as required by law.

3d. That notwithstanding the election and qualification of the relator, the said Jacob Stuckrath has on and since the first Monday of January, instant, usurped, intruded into and unlawfully held and exercised the said office of Commissioner, and still continues to do so.

The defendant appeared and moved to quash the writ. After argument the motion to quash was denied; and thereupon he demurred to the suggestion, and assigned the following causes of demurrer, viz.:

1st. That the suggestion is insufficient in law and does not contain any matter whereon the court can ground any order or judgment, or give the relator any relief, &c.

2d. That the relator is not a proper or competent party to prosecute the writ of *quo warranto* in this case.

3d. That the suggestion is insufficient in form and substance.

4th. That the pretended election of the relator as a commissioner of said county was, and is, illegal, null and void.

5th. That by the Constitution and laws of the Commonwealth the respondent was and is entitled to hold and enjoy the office of Commissioner, with all the rights, powers, &c., thereunto appertaining, until the first Monday of January, A. D. 1876.

On the argument it was claimed by the learned counsel for the defendant, that under the provisions of the New Constitution he is entitled to hold the office of commissioner until the first Monday of January, 1876; that the election of the relator in November last was unauthorized and void and that in any event the relator has no standing in court for the reason that the writ could not issue without the intervention of the Attorney General.

These positions cover the whole case and present for our consideration two questions, viz.: Whether the election of the relator in November last was authorized by law, and if so, was it competent for him to make the suggestion upon which the writ issued?

If the position assumed by the defendant, viz.: that his term of office is not ended, and will not expire until the first Monday of January, 1876, be correct, it follows as matter of course, that the election of the relator was without authority of law and therefore void. Let us inquire how this is.

Before the adoption of the present Constitution Commissioners were elected under the act of 1834, which provided for the election of *one* commissioner at each annual election, to serve for three years and until his successor was duly elected and qualified. This act continues in full force, except so far as it has been abrogated by the provisions of the New Constitution, which went into effect on the first day of January, 1874, "*for all purposes not otherwise provided therein.*" The 2d section of the schedule provides that all laws in force at the time of the adoption of the Constitution, not inconsistent with it, shall continue.

Section 7 of article 13, provides that at the general election in 1875, *three* county commissioners shall be elected on the system of limited voting, and, in like manner, three every third year thereafter. When this new system goes into operation at the general election in November, 1875, it will necessarily supersede the provisions of the act of 1834, requiring the election of one commissioner

annually. *Then,* instead of one, *three* commissioners will be elected, and each voter will be entitled to vote for not more than two of them. But, until the new system does take effect, the act of 1834 may well stand, except as to such provisions of it as are changed by the New Constitution.

In order to prepare the way for the introduction of this new system, the 28th section of the schedule provides that "the terms of office of county commissioners, chosen *prior to the year 1875,* which shall not have expired before the first Monday of January, 1876, shall expire on that day." This will apply to the commissioners elected in the years 1873 and 1874.

Under the act of 1834, a commissioner elected at the general election in October entered upon the duties of his office as soon as he gave bond and was duly qualified. The second section of article 14 of the Constitution provides that commissioners, as well as other county officers, shall enter upon the duties of their office on the first Monday of January next after the election. To meet this and other changes introduced by the New Constitution, as to the time of holding elections, &c., the 26th section of the schedule provides that "all persons in office at the time of its adoption and at the first election under it, shall hold their respective offices until the term for which they have been elected or appointed shall expire, and until their successors shall be duly qualified, unless otherwise provided in the Constitution."

By virtue of this last provision the defendant was undoubtedly entitled to hold his office until the first Monday of January, instant, and if his successor had not then been duly elected and qualified, i.e would be entitled to continue in office. But why should he claim to hold the office for more than a year longer than the term for which he was elected?

We have referred to all the provisions of the New Constitution, bearing on the office of county commissioner, and found nothing that conflicts with the right of the people to elect a commissioner, at the last general election to succeed the defendant, and serve until the first Monday of January, 1876, the time fixed for the induction into office of the new Board of Commissioners, to be chosen at the next November election. On the contrary the election of the relator appears to be in perfect harmony with the new system which will then go into effect. The change in the mode of electing commissioners, that is of electing *three* at once and three every third year thereafter, instead of *one* annually by the terms of the Constitution itself, does not go into operation until the next annual election; and if this be so, why should not the act of 1834 be regarded as still in force at the time of the last general election, and the election of the relator be considered regular and valid? It is true that

he cannot serve longer than until the first Monday of January, 1876, because the New Constitution provided, as we have seen, that the terms of all commissioners elected *prior to the year 1875* shall expire on that day.

This construction appears to be in harmony with all the provisions of the New Constitution, and at the same time gives force and effect to the act of 1834, until the new system goes into operation.

We conclude therefore that the election of the relator in November last was authorized by law and valid, and that on the fourth day of January, instant, he had the right to assume the duties of the office of commissioner as the regularly elected and qualified successor of the defendant.

Assuming this to be so, the next question is, whether it was competent for him alone, without the intervention of the Attorney General, to present the suggestion upon which the writ issued?

We are of opinion that it was. The second section of the act of 14th June, 1836 (Purdon 1206), giving the Courts of Common Pleas concurrent jurisdiction with the Supreme Court in certain classes of cases therein specified, provides that writs of *quo warranto* may be issued in said courts, "in case any person shall usurp, intrude into or unlawfully hold or exercise any county or township office," &c., &c., and then concludes with these words, viz. : "and in any such case the writ aforesaid may be issued upon the suggestion of the Attorney General, or *any person or persons designing to prosecute the same*." This has reference to the cases enumerated in the second section of the act, as was held in Com. v. Burrell, 7 Bar. 34. While the words "any person or persons designing to prosecute the same" would appear to authorize *any one* to appear as relator in such proceedings, it has been held under the practice, founded on the statute of 9th Anne, that they mean *any person* having an interest to be affected or suffering a wrong to be redressed, and not a mere stranger who has no interest.

A relator who is entitled to a township or county office, into which another has intruded or which is wrongfully held by another, has a *special interest* in the question which he seeks to raise by a writ of *quo warranto*. In Commonwealth ex rel. McLaughlin v. Cluley, 6 P. F. Smith, 270, this question was before the Supreme Court, and it was there held that the relator, McLaughlin, had no standing in court, for the sole reason that he had no right to the office of sheriff from which he sought to oust Cluley.

The question was also considered in Com. v. Burrell, above cited and the reasoning of the case justified the conclusion that a person who has been duly elected to a township or a county office, and has qualified, has a right under the second section of the act 14 June, 1836, to file the

suggestion for a writ of *quo warranto* against the person who has intruded into or unlawfully retains the office.

From what has been said it follows that judgment on the demurrer should be entered in favor of the Commonwealth.

January 29, 1875, this cause came on to be heard on the demurrer and was argued by counsel, and upon consideration thereof it is adjudged and determined that the relator, Jacob Lashel, was duly elected to the office of Commissioner of the county of Allegheny, and on the fourth day of January, instant, was duly qualified and rightfully entitled to exercise the franchises, right, powers and privileges of said office, as the successor of the defendant, Jacob Stuckrath, that, on and since the last mentioned day, the said defendant has usurped, intruded into, and unlawfully held, and exercised said office; and it is now considered and adjudged that the said defendant, Jacob Stuckrath, be ousted and altogether excluded from the said office of commissioner, and that he pay the costs of this proceeding.